IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSAN NGUYEN,

               Plaintiff,

    v.

R. SETH WILLIAMS et al.,

               Defendants.

CIVIL ACTION
NO. 16-0829

## OPINION

**Slomsky, J.**                                                                 **June 21, 2016**

## I.    INTRODUCTION

Plaintiff Susan Nguyen brings this civil action against R. Seth Williams, District Attorney of the City of Philadelphia; and the Court of Common Pleas of Philadelphia County and the Municipal Court of Philadelphia County ("the Philadelphia Court Defendants"). (Doc. No. 2.) Plaintiff alleges that her constitutional rights have been violated by Defendants when they engaged in malicious prosecution against her, issued restraining orders against her, and set excessive bail, all in violation of 42 U.S.C. § 1983.[1] (Id. at 2, 5.) Defendants have filed Motions to Dismiss the Amended Complaint. (Doc. Nos. 5, 8.) For the following reasons, the Court will grant these Motions and dismiss this case.

---

[1]  Plaintiff alleges that the Court has federal question jurisdiction over her claims, yet she does not specify the legal basis for her cause of action. Because she asserts that this Court has federal question jurisdiction, and because she claims that her constitutional rights have been violated by state-official Defendants, the Court will construe her claims to fall under the purview of § 1983.

## II.    BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint[2]:

[On November 13, 2014, Plaintiff] was discharged unexpectedly by the CFO and the firm Fox Rothschild LLP at 2000 Market Street with no reason other than the State[] of Pennsylvania's Employment At-will law. . . [T]he reason of [her] dismissal [was that] one of [her] personal emails to [the CFO] had gotten [her] in trouble.

. . .

[By December 15, 2014, Plaintiff] continued to [make] calls to the CFO [at Fox Rothschild], left message[s], [and] spoke to the Chief Talent Officer asking for the reasons for [her] discharge to find closure.

[On December 24, 2014, December 31, 2014, and January 5, 2016, Plaintiff returned to Fox Rothschild and tried to contact the CFO. On the third occasion, she] . . . was told that [she] was not allowed to have access. [On January 8, 2015, Plaintiff] went [to Fox Rothschild and] again [she] was denied access by the lobby attendance. . . .

[On January 17, 2015, Plaintiff] received a FedEx letter from the Chief Talent Officer . . . regarding [her] continuing to make calls to . . . the firm. The letter stated [she] should refrain from coming to the firm, to stop communicating with the firm's employees at work [and] also stop engaging in stalking behaviors. [Plaintiff was offered sessions of counseling that the firm would pay for.] The letter further stated that [her] employment with the firm has ended and that [her] employment would not be reinstated. If [she] trespassed on the firm's property, the firm would contact the police and seek [her] immediate arrest. If [she] continued to stalk or harass the firm's employees, the firm would prosecute [her] in court. . . . [Plaintiff was told] the reason [she] was dismissed from the firm was that [she] had stalked and harassed [her] supervisor before and after [her] discharge.

. . .

[On February 13, 2015, Plaintiff returned to Fox Rothschild to inform them of a complaint she filed with the Pennsylvania Human Relations Commission and to inquire why the CFO] had not responded to any of [her] phone calls, emails and personal notes. . . . [She] received a letter from the General Counsel . . . that it was important for [her] to . . . refrain from coming to the firm, to immediately stop communicating with the firm's employees at work . . .[and to] not engage in stalking behaviors. . . .[She again was offered counseling, and told that if she was]

---

[2]    Any alterations to the original language in Plaintiff's Amended Complaint appear in brackets.

found trespass[ing] on the firm's property, the firm will contact the police and seek [her] immediate arrest.

. . .

[On March 20, 2015, Plaintiff returned to Fox Rothschild and] was denied access as soon as [she] got to the building. . . .The building security called the police. . . [who told her to go home. She] defied the order and refused to leave the building, and with that the police . . . placed [her] in restraints in the back of the police car. . .When released, [she] went across the street [and called the CFO and other Fox Rothschild employees again]. . . . [Plaintiff] decided to wait for [the CFO] when he had [finished] work. . . . [A] police officer came and spoke to [her and advised that she] stay away from the building if [she did] not want to be arrested. . . . [Nonetheless, she returned to the building where she was] issued a citation for disorderly conduct[] and trespassing. . .

(Doc. No. 2 at 7-10.)

On April 7, 2015, while awaiting her arraignment, Plaintiff was arrested.  (Id. at 11.) Upon her arrest, Plaintiff was told that the police had attempted to call her but that she refused to return their calls.  (Id.)  Accordingly, a warrant was issued for her arrest, she was charged as a fugitive of justice, and she was incarcerated for seven days.  (Id. at 4.)  On April 14, 2015, the state court issued a restraining order, requiring Plaintiff to stay away from Fox Rothschild and its employees.  (Id.; Doc. No. 5-1.)  On July 1, 2015, Plaintiff was arrested for violating the restraining order after calling and writing notes to Fox Rothschild employees.  (Doc. No. 2 at 5.) Plaintiff was arrested and taken into custody two more times on August 20, 2015 and on November 2, 2015.  (Id. at 4-5.)  With each arrest for violation of court orders, Plaintiff's bail was increased.  (Id. at 5.)

On February 19, 2016, Plaintiff filed this action pro se against Defendants, and on April 1, 2016, she amended her Complaint.  (Doc. Nos. 1, 2.)  In her Amended Complaint, Plaintiff asserts that the Courts of Philadelphia County and the Philadelphia District Attorney have violated her constitutional rights by restraining her free speech through issuing "Stay Away"

orders, by maliciously prosecuting her, and by setting excessive bail.  (Doc. No. 2 at 2, 5.) Plaintiff seeks to have this Court enjoin the pending state court criminal proceedings against her and to expunge the related charges from her state criminal record.  (Id. at 13.)  She also requests that this Court lift the restraining orders against her, and to require that a named attorney represent her in the state court proceedings even though he had previously declined to represent her. (Id. at 7, 13-14.)  Finally, Plaintiff seeks unspecified damages.  (Id. at 14.)

On April 13 and 22, 2016, Defendants filed separate Motions to Dismiss.  (Doc. Nos. 5, 8.)  On April 14, 2016, Plaintiff filed a Motion for Appointment of Counsel.  (Doc. No. 6.)  By Court Order dated April 22, 2016, the Court instructed Plaintiff to respond to the Motions to Dismiss before it would consider referring the matter to the Civil Rights Panel for appointment of counsel, and it afforded her additional time to respond.  (Doc. No. 9.)  On May 13, 2016, Plaintiff indicated to the Court by letter that she would not be complying with the Court's April 22, 2016 Order.  (Doc. No. 11.)  On May 16, 2016, the Court again instructed Plaintiff to respond to the Motions to Dismiss.  (Doc. No. 10.)  That same day, Plaintiff informed the Court by Motion that she would not respond to the Motions to Dismiss or comply with the Court's Orders. (Doc. No. 12.)

For the following reasons, the Court will grant Defendants' Motions to Dismiss and deny any outstanding Motion as moot.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citations omitted).

When considering a motion to dismiss, the Court may consider certain documents not made part of the Complaint. As noted in <u>Miller v. Cadmus Communications</u>:

> Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

No. 09-cv-02869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992); <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d ns. 1-2 (3d Cir. 1995)); <u>see also</u> <u>Doe v. Hesketh</u>, 77 F. Supp. 3d 440, 445 (E.D. Pa. 2015).

## IV.   ANALYSIS

### A.  Plaintiff's Claims Against the Philadelphia Court Defendants Will Be Dismissed

Plaintiff claims that the Philadelphia Court Defendants violated her constitutional rights by issuing restraining orders against her that restricted her freedom of speech. (Doc. No. 2 at 5.) Plaintiff also alleges that the Philadelphia Court Defendants set an unconstitutionally excessive bail in her criminal proceedings that are currently pending before state court. (<u>Id.</u> at 2.) Accordingly, Plaintiff requests that this Court enjoin the state court proceedings and to have it expunge her criminal record. Plaintiff also seeks to have this Court order the state court to lift any restraining order it has issued against her.

This Court lacks any jurisdiction to entertain these claims or grant the relief sought.

First, and most importantly, "[t]he Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court." <u>Capogrosso v. Sup. Ct. of N.J.</u>, 588 F.3d 180, 185 (3d Cir. 2009). This grant of absolute immunity from federal suit applies to § 1983 claims against a state court. Id. at 184; <u>see also</u> <u>Azubuko v. Royal</u>,

6

433 F.3d 302, 303 (3d Cir. 2006).  The Philadelphia Court Defendants are state courts entitled to this immunity, and they have not waived it by consenting to be sued in federal court.  (Doc. No. 8 at 4.)  Therefore, Plaintiffs claims against them must be dismissed for want of jurisdiction.

Second, inasmuch as Plaintiff brings a § 1983 claim against the Philadelphia Court Defendants, a § 1983 claim can only be brought against a "person" who violates one's federal rights.  Callahan v. City of Phila., 207 F.3d 668, 669-670 (3d Cir. 2000).  The Third Circuit acknowledges that "components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes."  Id. at 674.  Plaintiff thus improperly brings a § 1983 against the Philadelphia Court Defendants—who are not "persons" under § 1983—and therefore her claims against them will be dismissed.

Finally, as the Philadelphia Court Defendants correctly note, a federal court is discouraged from exercising jurisdiction over a suit before it when there is parallel pending state court criminal proceeding.  See Younger v. Harris, 401 U.S. 37 (1971).  Indeed, the United States Supreme Court commands that federal courts of equity should not "restrain" an ongoing parallel state criminal prosecution.  Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013).  That is precisely what Plaintiff seeks this Court to do—enjoin a state court from continuing a pending criminal proceeding.  Thus, even if this Court had jurisdiction over Plaintiff's claims against the Philadelphia Court Defendants, which it does not under the Eleventh Amendment, it would decline to exercise it.

Because the Court lacks authority to grant Plaintiff's requested relief against the Philadelphia Court Defendants and has no jurisdiction over these claims, they must be dismissed.

**B.  Plaintiff's Claim Against Defendant R. Seth Williams Will Be Dismissed**

Plaintiff brings a claim against Defendant Williams for malicious prosecution.  The prosecution of her in state court is based on her stalking and harassing her previous employer and on her repeated violations of court-imposed restraining orders.  (Doc. No. 2 at 2.)  She requests that the Court order Defendant Williams to drop the charges against her and to cease prosecuting her in state court.

Defendant Williams asserts that this § 1983 claim is brought against him in his official capacity as the Philadelphia District Attorney.  (Doc. No. 5 at 6.)  Because such a claim is essentially a claim of municipal liability under Monell v. N.Y City Dep't of Soc. Servs., 436 U.S. 658 (1978), her claims against Defendant Williams must fail because they do not allege any adopted policy or custom attributed to him.  (Id. at 6-7.)  Defendant Williams also asserts that Plaintiff has failed to state a prima facie case of malicious prosecution under § 1983.  (Id. at 7.) The Court agrees.

First, Plaintiff's § 1983 claim against Defendant Williams in his official capacity cannot survive under Monell.[3]  See McHugh v. Koons, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[] pursuant to Monell.")  Under Monell, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Board of Cnty. Comm'rs of Bryan Cnty., Okla., v. Brown, 520 U.S. 3971, 403 (1997) (citing Monell, 436 U.S. at

---

[3]   The Court notes that Plaintiff has not identified whether her claim against Defendant Williams is made in his official or individual capacity.  After reading the Amended Complaint, however, it is impossible to construe her claims against Defendant Williams as made against him in anything but his official capacity.  The Amended Complaint never mentions his personal involvement in any of the constitutional violations alleged, and Plaintiff seeks to impute liability under a theory of respondeat superior.

689).  Furthermore, a "government entity may not be held liable under section 1983 under the respondeat superior doctrine."  <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).  Plaintiff here seeks to impose supervisory liability on Defendant Williams in his official capacity as the District Attorney responsible for actions taken by members of the District Attorney's Office.  Plaintiff's claim therefore falls under <u>Monell</u>, yet she does not allege any policy or custom adopted by Defendant Williams that would allow § 1983 liability to attach.  Therefore, Plaintiff's claim against Defendant Williams cannot survive.

Second, Plaintiff has failed to allege a proper violation of prosecutorial misconduct.  To state such a claim, Plaintiff "must show that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose consistent with the concept of seizure as a consequence of a legal proceeding."  <u>Bircher v. Pierce</u>, 610 F. App'x 194, 197 (3d Cir. 2015) (citing <u>Johnson v. Knorr</u>, 477 F.3d 75, 82 (3d Cir. 2007)).  As Defendant Williams notes, the criminal proceedings are still pending before the state court, and thus there is no "criminal proceeding [that] ended in [Plaintiff's] favor."  (Doc. No.5 at 7.)  Plaintiff also concedes in her Amended Complaint that she violated the state court's restraining order by contacting her previous employer.  Therefore, probable cause that she had violated the law has been admitted to by Plaintiff, and thus her allegation of malicious prosecution lacks necessary elements to state a claim.  Accordingly, Plaintiff's claims against Defendant Williams will be dismissed.

### C.  Plaintiff Will Not Be Granted Leave To Amend Her Amended Complaint

Although Plaintiff has not requested that she be granted leave to amend her Complaint a second time, the Court will not grant her leave to amend because doing so would be futile.

"When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview Sate Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original). Granting leave to amend is futile when "the plaintiff was put on notice as to the deficiencies of [her] complaint, but chose not to resolve them." Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002). A plaintiff asserting § 1983 claims is put on notice of the deficiencies of her complaint by way of a defendant's motion to dismiss. Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011). Finally, "a district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

Here, Plaintiff was put on notice of the deficiencies of her § 1983 claims against defendants by the filings of their Motions to Dismiss. The Court on several occasions instructed Plaintiff to respond to these Motions, yet she repeatedly refused to do so. Given her refusal to respond, it would appear that granting Plaintiff leave to amend her Complaint sua sponte therefore would be futile. See Krantz, 305 F.3d at 144. In addition, given the foregoing analysis of her claims, any attempt by Plaintiff to amend her Complaint a second time would not change the result because she would still fail to "state a claim on which relief could be granted." See Shane, 213 F.3d at 115.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' unopposed Motions to Dismiss. An appropriate order follows.